FILED
2021 Jun-28  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES HENRY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:20-cv-00058-ACA-SGC |
| | ) | |
| GWENDOLYN GIVENS, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

The plaintiff, James Henry Davis, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States.  (Doc. 1).  Davis names Warden Gwendolyn Givens as a defendant.  (Doc. 1 at 1).[1]  Davis alleges that on August 26, 2019, an inmate stabbed him, causing him serious injuries.  (Doc. 1 at 5).  Davis contends Givens failed to protect him from the inmate assault and was deliberately indifferent to his conditions of confinement in violation of the Eighth Amendment.  (Doc. 1 at 5–6).  Davis sues Givens in both her official and individual capacities and seeks monetary, injunctive, and declaratory relief for her alleged failure to protect him and her deliberate indifference to his conditions of confinement.  (Doc. 1 at 4, 6).

---

[1] Davis also names as defendants an unknown lieutenant and sergeant on duty when the events alleged in the complaint occurred.  (Doc. 1 at 1, 4).  Because the identities of these individuals have not been discovered, as discussed herein, Davis's claims against them are due to be dismissed without prejudice.

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). Pursuant to the following analysis, the undersigned recommends the court grant Givens's motion for summary judgment in part and deny it in part.

## I. PROCEDURAL HISTORY

On August 19, 2020, the court entered an Order for Special Report directing the Clerk to forward a copy of the complaint to Givens and ordering Givens to file a Special Report addressing Davis's factual allegations. (Doc. 12). The court advised Givens that the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. (Doc. 12 at 4, 8–9).

On November 23, 2020, Givens filed a Special Report, supplemented by an affidavit and other evidence. (Doc. 18). On December 30, 2020, the court notified the parties that the court would construe the Special Report as a motion for summary judgment and notified Davis that he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 20). The court also advised Davis of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *Id. See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir.

2

1985).  Davis filed a response.  (Doc. 21).  This matter is now before the court on Givens's motion for summary judgment and the plaintiff's response.

## II. STANDARD OF REVIEW

Because the court has construed the defendant's Special Report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## III. SUMMARY JUDGMENT FACTS[2]

When the events in the complaint occurred, Davis was incarcerated in the W.E. Donaldson Correctional Facility ("Donaldson") and assigned to O-Dorm

---

[2] Pursuant to foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to Davis. Factual disputes are addressed in footnote form.

4

which is located away from the other dorms.  (Doc. 1 at 2, 5).  On August 26, 2019, at about 12:55 p.m., there were no correctional officers inside the O-Dorm or the O-Dorm cubicle. (Doc. 1 at 5).  Davis became involved in a verbal altercation with inmate Charles Taylor.  (Doc. 1 at 5; Doc. 18-2 at 1).  Taylor pulled out a knife and began chasing Davis around the dorm.  (Doc. 1 at 5).  Taylor eventually stabbed Davis three times.  (Doc. 1 at 5).  Davis was forced to "make his way out of the dorm and go about a hundred yards to the Southside guard station" to summon help from prison staff.  (Doc. 1 at 5).   Davis sustained serious injuries due to the stabbing and was transported to UAB Hospital where he remained for seven days.[3]  (Doc. 1 at 5; Doc. 18-2 at 1).  Both Davis and Taylor were charged with fighting with a weapon.  (Doc. 18-2 at 1).

Davis alleges inmates in O-Dorm were left without supervision four to five days per week[4] and the lights in the dorm were kept off.  (Doc. 1 at 5).  He states

---

[3] The Incident Report reflects that on August 26, 2019, at approximately 12:55 p.m., Davis approached Correctional Officer John Bell and advised him that inmate Charles Taylor had stabbed him several times.  (Doc. 18-2 at 1).  Davis was escorted to the Health Care Unit for an examination and treatment.  (Doc. 18-2 at 1).  Davis sustained several stab wounds to the shoulder and chest areas.  (Doc. 18-2 at 1).  Correctional Sergeant William Patrick apprehended Taylor in O-Dorm and escorted him to the Health Care Unit.  (Doc. 18-2 at 1).  Taylor sustained multiple lacerations and abrasions to both of his legs and the side of his torso from Davis hitting him with a stick after Taylor stabbed Davis.  (Doc. 18-2 at 1).  Sergeant Patrick notified Correctional Captain Shannon Caldwell and Correctional Lieutenant Eddie Watts of the incident.  (Doc. 18-2 at 1).  Prison staff transported Davis to UAB Hospital's emergency room due to the severity of his injuries.  (Doc. 18-2 at 1).  According to the Incident Report, Davis returned to the prison three days later on August 29, 2019.  (Doc. 18-2 at 1).

[4] Elsewhere, Davis claims there were no officers present in the O-Dorm for six or seven days per week.  (Doc. 21 at 1).

5

Warden Givens came to the dorm two or three days per week for inspections but alleges Givens was deliberately indifferent to a serious risk of harm to inmates due to the lack of supervision.[5]   (Doc. 1 at 5).   Davis asserts he spoke with Givens several times about the lack of officers in the O-Dorm and cubicle.  (Doc. 21 at 1; Doc. 21 at 8, Davis Aff.).   When this incident occurred, Givens had been assigned to Donaldson for approximately six weeks.  (Doc. 18-1, Givens Aff.).

## IV. ANALYSIS

### A.   Fictitious Parties

Davis alleges an unknown lieutenant and sergeant were responsible for operating and supervising the Shift Commander's Office and assigning officers to work posts, respectively.  (Doc. 1 at 4).  Davis contends these individuals were deliberately indifferent to his safety by failing to provide proper security in the O-Dorm on August 26, 2019, when Taylor stabbed him.  (Doc. 1 at 4–6).

Generally, there is no fictitious party practice in federal court unless a plaintiff can specifically describe or identify the defendant.  *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997).  Because Davis described these two individuals as the lieutenant and sergeant on duty when he was assaulted on

---

[5] Givens states she conducted security checks and inspections "throughout the day." (Doc. 18-1, Givens Aff.). Givens alleges she has no knowledge of matters pertaining to Davis or any other inmate. (Doc. 18-1, Givens Aff.).

August 26, 2019, the court determined their identities may be uncovered through Givens's Special Report and/or discovery.  (Doc. 12 at 3 n.1).

Givens's Special Report included an Incident Report of the August 26, 2019 assault which named several supervisory officials.  (Doc. 18-2 at 1–2).  However, Davis has not alleged that any of these supervisory officials were the individuals who were deliberately indifferent to his safety by failing to ensure officers were present in O-Dorm on August 26, 2019.  Because Davis has not identified the unknown lieutenant and sergeant he contends violated his constitutional rights, Davis's claims against them are due to be dismissed without prejudice.  The undersigned turns now to Davis's claims against Givens—the remaining defendant.

## B.    Official Capacity Claims

To the extent Davis's constitutional claims are brought against Givens in her official capacity for money damages, they are due to be dismissed under the doctrine of sovereign immunity.  It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Likewise, Eleventh Amendment immunity bars claims for money damages brought against officials and employees of state entities sued in their official capacities.  *Id*. at 101–02.

7

Based on the foregoing, Givens's motion for summary judgment on Davis's Eighth Amendment claims against her in her official capacity for money damages is due to be granted.  The remainder of this report and recommendation will address Davis's claims against Givens in her individual capacity.

### C.      Eighth Amendment – Failure to Protect

Davis alleges Givens failed to protect him from inmate Charles Taylor's assault on August 26, 2019, in violation of the Eighth Amendment.  (Doc. 1 at 5–6).  Davis maintains Givens was aware that security officers were not present in the O-Dorm and failed to protect him.  (Doc. 1 at 5–6; Doc. 21 at 8, Davis Aff.).  Givens' motion for summary judgment on Davis's failure to protect claim is due to be granted.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody.  *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citation omitted).  It is clear, however, that not every injury suffered by an inmate at the hands of another inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety."  *Farmer*, 511 U.S. at 834; *see Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).  "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and

unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)); *see Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981).[6]  It is when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm that a constitutional violation occurs.  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," is not sufficient to establish liability on the part of the official.  *Id*. at 838. Furthermore, the known risk of injury must be a "strong likelihood, rather than a

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

mere possibility." *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (internal quotation marks and citations omitted).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, the plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known danger or risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Viewing the facts in a light most favorable to Davis, the record is devoid of evidence that Givens knew Taylor, or any other inmate, posed a significant risk of harm to Davis. Davis does not allege he personally informed Givens that Taylor posed a specific threat to him or that he voiced any "particularized threat or fear" to Givens such that Givens could infer a substantial risk of harm existed to Davis prior to the assault. *Carter v. Galloway*, 352 F.3d 1346, 1349–50 (11th Cir. 2003). Davis alleges he complained to Givens about the lack of security in the O-Dorm

prior to the assault.  (Doc. 1 at 5).  But at most, Davis conveyed a vague and generalized threat of harm, not a specific and particularized threat from which Givens could infer a strong likelihood of injury, as opposed to a mere possibility. *See Carter*, 352 F.3d 1346 at 1349–50 (11th Cir. 2003); *Edwards*, 867 F.2d at 1276.  And Givens's generalized awareness of a risk to Davis does not satisfy the subjective awareness requirement and is insufficient to state a failure to protect claim.  *See Carter*, 352 F.3d at 1350.  Accordingly, there is no evidence Givens had knowledge of any impending risk of harm to Davis, substantial or otherwise, posed by another inmate.

Moreover, the Eleventh Circuit Court of Appeals has specifically held it is not enough for a plaintiff to state, "Well, they should have known," to show a defendant had subjective awareness of a substantial risk of harm to him. *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013) (finding that if the court accepted such theory of liability, the deliberate indifference standard would be "silently metamorphosed into a font of tort law—a brand of negligence redux— which the Supreme Court has made abundantly clear it is not").  As stated previously, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [a constitutional violation]."  *Farmer*, 511 U.S. at 838.

11

Because the record is devoid of evidence Givens had knowledge of a particularized threat or fear that Taylor, or any other inmate, posed a substantial risk of serious harm to Davis, *Carter*, 352 F.3d at 1349, Givens's motion for summary judgment on Davis's Eighth Amendment failure to protect claim is due to be granted.

### D.     Eight Amendment – Conditions of Confinement

Davis further complains Givens was deliberately indifferent to his conditions of confinement by failing to ensure correctional officers were present in the O-Dorm and that lights remained on.  (Doc. 1 at 5–6; Doc. 21 at 8, Davis Aff.). Although similar to his failure to protect claim, here, Davis contends Givens was deliberately indifferent to his conditions of confinement and her duty to keep him reasonably safe.  *See Ellison v. Ward*, No. 3:21-005, 2021 WL 2021458, *2–4 (S.D. Ga. Apr. 27, 2021) (discussing a claim concerning an inmate-on-inmate assault under both a failure to protect and conditions of confiement analysis); *Knight v. Lang*, No. 18-00036-JB-B, 2020 WL 1018567, *6–11 (S.D. Ala. Feb. 7, 2020) (same).

Whether a prisoner presents his claim as one for allegedly unconstitutional conditions of confinement, failure to protect, or deliberate indifference, he must allege facts sufficient to satisfy two components: one objective and the other subjective. *See Farmer*, 511 U.S. at 846.  Prison conditions amount to cruel and

unusual punishment only when they result in a "unquestioned and serious deprivation of basic human needs."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  As stated herein, prison officials must furnish prisoners with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer*, 511 U.S. at 832–33 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.  Therefore, extreme deprivations are required to make out a conditions of confinement claim under the Eighth Amendment.  *See Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004).  When an inmate alleges that several different conditions of confinement violated his constitutional rights, the court should consider whether the claims together amount to conditions which fall below constitutional standards.  *See Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575–76 (11th Cir. 1985).  The U.S. Supreme Court has explained that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991) (internal quotation marks omitted).

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (1993).   In order to establish an official was deliberately indifferent, "a plaintiff must prove the official possessed knowledge both of the infirm conditions and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id.* at 1535 (quoting *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985)).

Davis contends Givens was deliberately indifferent to the conditions of his confinement because there were no correctional officers present in the O-Dorm for four or five days a week and Givens only conducted security checks two or three times a week.  (Doc. 1 at 5–6; Doc. 21 at 8, Davis Aff.).  Additionally, Davis states the lights in the O-Dorm remained off.  (Doc. 1 at 5–6; Doc. 21 at 8, Davis Aff.). Davis maintains he informed Givens several times that there were no officers present in the dorm and the lights were kept off, but she failed to correct the issues. (Doc. 21 at 8, Davis Aff.).  He asserts when inmate Taylor stabbed him on August 29, 2019, no officers were present in the O-Dorm or in the O-Dorm cubicle, and he was forced to run to the Southside guard shed to obtain help.[7]  (Doc. 1 at 5).

Viewing the evidence in the light most favorable to Davis, there is a genuine dispute of material fact whether Givens was deliberately indifferent to Davis's

---

[7] Davis alleges the Southside shed is 100 yards away from the O-Dorm.  (Doc. 1 at 5).

constitutional right to reasonable safety.  Most critically, Givens does not dispute Davis's assertions that there were no correctional officers present in the O-Dorm or in the cubicle four or five days a week.  (Doc. 18-1, Givens Aff.).  Givens does not state that correctional officers were assigned to posts in the O-Dorm daily nor offer any post assignment rosters to that effect.  (Doc. 18-1, Givens Aff.).  At most, Givens claims she conducted periodic security checks, but she does not allege how often these checks occurred.  (Doc. 18-1, Givens Aff.).  Neither does Givens explain how her periodic security checks were a sufficient substitute for constant supervision of the inmates housed in the O-Dorm.  (Doc. 18-1, Givens Aff.).  For instance, Givens does not allege her security checks were supplemented with more frequent checks by other prison staff or that there was constant monitoring by prison staff through other methods such as closed-circuit surveillance.  (Doc. 18-1, Givens Aff.).  And Givens fails altogether to address Davis's allegation that the lights were kept off in O-Dorm.  (Doc. 18-1, Givens Aff.).  Although Givens contends she had only been at Donaldson six weeks when Taylor stabbed Davis and that she had "no knowledge of Davis nor any other inmate," she does not dispute that an inmate in O-Dorm advised her of the lack of security and lighting in the O-Dorm.  (Doc. 18-1, Givens Aff.).

A complete and utter lack of supervision by correctional officers for four or five days a week at a maximum-security prison such as Donaldson constitutes an

extreme deprivation. *See Chandler*, 379 F.3d at 1298. And while inadequate lighting, alone, may be insufficient to state an extreme deprivation, inadequate lighting coupled with a lack of security could compound an already unsafe condition of confinement. *Wilson*, 501 U.S. at 304–05. Accordingly, Davis has established the conditions in the O-Dorm "pose[d] an unreasonable risk of serious damage to his . . . health and safety." *Chandler*, 379 F.3d at 1289. Givenss' failure to adequately dispute Davis's assertions creates a question of fact whether she was deliberately indifferent to Davis's conditions of confinement as it relates to his safety while he was housed in the O-Dorm and her motion for summary judgment is due to be denied.[8]

### E.   Qualified Immunity

Givens argues she is entitled to qualified immunity regarding Davis's claims against her. (Doc. 18 at 13–15). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir.

---

[8] To be clear, the court is required to view the facts in a light most favorable to the non-moving party, and the facts set forth here may or may not be the true facts. Indeed, Davis's allegation there were no correctional officers present in the O-Dorm four or five days a week may be an exaggeration. But Givens's affidavit wholly fails to dispute this. Neither has Givens submitted any institutional documents which would show that correctional officers were assigned to the O-Dorm daily. *See Sears v. Roberts*, 922 F.2d 1199, 1209 (11th Cir. 2019) ("We do not know what the true facts are, but we do know that a genuine dispute of material fact exists, and it precludes granting summary judgment to the correctional officers on [the plaintiff's] § 1983 . . . claims.").

2002) (internal quotation marks and citation omitted).  To obtain qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity in not appropriate." *Id*.

The plaintiff must show "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (footnote omitted).  Clearly established means that when the official's conduct occurred, "'the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.'"  *Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1272 (11th Cir. 2021) (some quotation marks omitted) (quoting *District of Columbia v. Wesby*, — U.S. —, 138 S. Ct. 577, 589 (2018)).  A plaintiff can demonstrate an official was on notice regarding the constitutionality of her actions in three ways:

> *First*, the plaintiff[] may show that a materially similar case has already been decided.  *Second*, the plaintiff[] can point to a broader, clearly established principle that should control the novel facts of the situation.  *Finally*, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary.  Under controlling law, the plaintiff[] must carry [his] burden by looking to

> the law as interpreted at the time by the United States Supreme Court,
> the Eleventh Circuit, or the [relevant State Supreme Court].

*Helm*, 989 F.3d at 1272 (quoting *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017)).  Clearly established case law must be "particularized" to the facts of the case and cannot be defined "at a high level of generality."  *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021) (quotation marks and citations omitted).

There is no dispute that Givens was acting within the scope of her discretionary authority when she allegedly displayed deliberate indifference to Davis's safety by failing to provide security and lighting in the O-Dorm. Additionally, the constitutional requirement that prison officials must take reasonable measures to protect the safety of inmates was clearly established by 2019. *See Farmer*, 511 U.S. at 832–33 (finding that the Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody and noting that inmates are stripped of means of self-protection and officials "are not free to let the state of nature take its course") (internal quotation marks and citations omitted); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (noting that when a state takes a person into custody, the Constitution imposes upon the state a corresponding duty to assume some responsibility for his safety and well-being) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 199–200 (1989)); *Harrison v. Culliver*, 746

F.3d 1288, 1298 (11th Cir. 2014) ("Prison officials have an obligation to protect prisoners from violence inflicted upon them by other prisoners.").

Even if these foregoing cases rise only to the level of a broad general principle that prison officials have a duty to provide reasonable protection to prisoners in their care, the rule requiring particularized case law to show a clearly established right contains a narrow exception. *See Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016). Specifically, this exception applies where the official's conduct "so obviously violates the constitution that prior case law is unnecessary." *Id*. (quoting *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013)). Indeed, "[a] broad statement of legal principle announced in case law may be sufficient if it establishes the law 'with obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id*. (quoting *Vinyard*, 311 F.3d at 1351). Additionally, the Eleventh Circuit has recognized the obvious-clarity exception "where conduct is so bad that case law is not needed to establish that the conduct cannot be lawful." *Id*. (quotation marks and citation omitted).

The undersigned finds the broad principle that prison officials are to take reasonable measures to protect the safety of inmates, *Farmer*, 511 U.S. at 832, establishes the law with obvious clarity such that every objectively reasonable

prison official facing similar circumstances would understand that leaving a dorm in a maximum security prison without security for four or five days and with no lighting is egregious and would violate an inmate's constitutional right to reasonably safe conditions of confinement. *See generally Taylor v. Riojas*, — U.S. —, 141 S. Ct. 52, 53–54 (2020) (finding alleged conditions of confinement were "particularly egregious" and the general constitutional rule prohibiting such extreme conditions applied with obvious clarity); *Patel v. Lanier Cty., Ga*., 969 F.3d 1173, 1190 (11th Cir. 2020) (recognizing the broad principle that when law enforcement officials know of a condition that poses a substantial risk of harm to an inmate and "do nothing to address it, they violate the Constitution" and finding no need to identify "any controlling case with closely analogous facts"). Accordingly, Givens is not entitled to qualified immunity in her individual capacity on Davis's conditions of confinement claim.

### F.    Injunctive Relief

As part of his request for relief, Davis seeks an order requiring Givens to ensure that an officer is assigned in each prison dorm at Donaldson and that there is proper lighting in the dorms.  (Doc. 1 at 6).  However, Givens is no longer warden of Donaldson, and Davis's request for injunctive relief is due to be denied

as moot.[9]  *See Robbins v. Robertson*, 782 F. App'x 794, 800 (11th Cir. 2019) (noting an injunction against former prison officials would provide the plaintiff no relief).

## V. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The court **DISMISS** Davis's claims against the fictitious parties **WITHOUT PREJUDICE**;

2. The court **GRANT** Givens's motion for summary judgment on Davis's claims against Givens in her official capacity for money damages and **DISMISS** the claims **WITH PREJUDICE**;

3. The court **GRANT** Givens's motion for summary judgment on Davis's Eighth Amendment failure to protect claim and **DISMISS** the claim **WITH PREJUDICE**;

4. The court **DENY** Givens's motion for summary judgment on Davis's Eighth Amendment conditions of confinement claim; and

5. The court **DENY** Davis's request for injunctive relief as **MOOT**.

## VI. NOTICE OF RIGHT TO OBJECT

---

[9] Davis acknowledges Givens is no longer employed at Donaldson and that his request for injunctive relief in moot.  (Doc. 21 at 4).

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a

hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DONE** this 28th day of June, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE